Leon H. SAUNDERS; Robert Felton; Saunders Land Investment Corporation, a Utah corporation; White Pine Ranches, a Utah general partnership; White Pine Enterprises, a Utah general partnership; and J. Richard Rees, Plaintiffs and Appellants,

v.

John C. SHARP and Geraldine Y. Sharp; and Associated Title Company, a Utah corporation, as Trustees, Defendants and Appellees.

No. 900332–CA.

Court of Appeals of Utah.

Sept. 12, 1991.

Robert M. Anderson, Glen D. Watkins (argued), Bruce Wycoff, Anderson & Watkins, Salt Lake City, for appellants Saunders, Felton, White Pine Ranches, and White Pine Enterprises.

Mark H. Anderson (argued), Marilynn P. Fineshriber, Patricia L. LaTulippe, Neilsen & Senior, Salt Lake City, for appellees John and Geraldine Sharp.

Before BILLINGS, Associate P.J., and ORME and RUSSON, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Following a bench trial in September 1988, the third district court entered a money judgment against appellants (White Pine) in favor of the appellees (Sharp). White Pine appealed from that judgment. During the pendency of the appeal from

the September 1988 judgment, the trial judge entered post-judgment orders which are the subject of this second appeal. We affirm those post-judgment orders in part and reverse and remand in part.

The facts forming the basis of the underlying foreclosure action are not at issue in this appeal.[1] The Sharps sold real property located in White Pine Canyon near Park City, Utah to White Pine. Each party claimed the other had failed to fulfill its contractual obligations. In September 1988, the district court determined White Pine had breached the contract and entered a money judgment against White Pine for $759,415.63 including principal, interest, costs, attorney fees, and delinquent property taxes, and ordered the property sold and the proceeds applied against the judgment. White Pine perfected a timely appeal of the judgment and this court subsequently affirmed. White Pine then petitioned the Utah supreme court for certiorari. The supreme court granted certiorari and ultimately reversed and remanded the case to this court for further review.[2]

After the September 1988 judgment was entered, White Pine asked the district court for a stay of the judgment pending appeal and moved for approval of a supersedeas bond. The district court set the bond amount at $79,193.36 and on January 20, 1989 White Pine posted the bond. The Sharps objected to the bond amount and the district court ultimately entered its final "Order Re: Supersedeas Bond" in March 1989. This order entered a stay and affirmed the amount of the bond, but provided the court would review the sufficiency of the bond at a hearing held after November 19, 1989.

In December 1989, the Sharps filed a "Motion to Supplement Judgment and Motion to Increase Liability on Bond." The trial judge granted the Sharps' motion. The court's order purported to automatically vacate the stay if additional security in the amount of $136,800.99 was not posted

by March 15, 1990. The order also awarded the Sharps additional attorney fees in the amount of $79,967.34 and post-judgment interest on the judgment through August 1, 1990. The trial judge subsequently amended the order to correct an error in the amount of interest awarded.

White Pine, in this appeal, challenges this amended post-judgment order claiming the district court erred in (1) providing for compound interest in the amended order, (2) lifting the stay of execution of judgment, and (3) improperly awarding additional attorney fees.

While this appeal was pending, White Pine filed a motion in the Utah Supreme Court for a stay pending action on its certiorari petition. The supreme court granted the motion for a stay and remanded the case to the district court to fix the amount of the bond. At that point, in August 1990, the parties entered into a stipulation wherein White Pine agreed to post an additional $136,800.99 in security as required under the amended order and the Sharps stipulated to the sufficiency of the security and agreed the stay of execution would continue through October 1, 1990, and thereafter until the district court considered the amount of an additional bond.

In November 1990, the Sharps filed a motion in the district court to correct the Amended Order and delete the language that White Pine argues in this appeal granted impermissible compound interest. In February 1991, the district court issued a "Third Amended Order Re: Defendant's Motion to Supplement Judgment and Motion to Increase Liability on Bond" omitting the controversial interest language.

## I. COMPOUND INTEREST

White Pine argues the language of the amended order impermissibly awards the Sharps compound interest. *See Mountain States Broadcasting Co. v. Neale,* 783 P.2d 551, 554 (Utah App.1989).

1. For a full explanation of the underlying transaction see this court's opinion in *Saunders v. Sharp,* 793 P.2d 927 (Utah App.1990).

2. The appeal of the underlying judgment, *Saunders v. Sharp,* No. 880710–CA, is presently before this court on remand.

Although the Sharps deny the language of the amended order had the effect of compounding interest, they, nevertheless, filed a motion with the district court in November 1990 to correct the prior order to delete the language which White Pine contends was improper. In February 1991, the district court granted the Sharps' motion and issued a third amended order deleting the language that purported to set out a "total judgment," and arguably awarding compound interest.

■ Generally, when substantive issues are resolved prior to appeal, the appeal is rendered moot. *Salt Lake City v. Tax Comm'n*, 813 P.2d 1174, 1177 (Utah 1991). As our supreme court has repeatedly stated, " 'when the requested relief cannot affect the rights of the litigants' we deem the case moot." *Id.* (quoting *Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989); *see also Spain v. Stewart*, 639 P.2d 166, 168 (Utah 1981); *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981).

In the instant case, the language White Pine argued created compound interest was deleted from the amended order. Thus, the issue is now moot and we do not consider it.

## II. STAY OF EXECUTION

■ White Pine presents an elaborate argument claiming the stay of execution was improperly vacated by the district court in its amended order.[3] We decline to address the multiple claims of error concerning the lifting of the stay as the relief

White Pine requests on appeal would not affect the rights of the parties. *See Salt Lake City v. Tax Comm'n*, at 1177–78.[4]

In August 1990, White Pine moved the supreme court for a stay pending action on a petition for certiorari. The supreme court granted the stay and remanded the case to the district court for the sole purpose of fixing the amount of the bond to be posted. Thereafter, the parties entered into a stipulation setting the bond at the amount set by the trial court in its amended order and continuing the stay pursuant to the specifications set out in the stipulation.[5] There is currently a stay of execution in existence.

## III. ATTORNEY FEES

Finally, White Pine argues the district court erroneously awarded the Sharps post-judgment attorney fees. White Pine contends the order went beyond the district court's jurisdiction, was premature, and contrary to the court's judgment.

### A. *Jurisdiction*

Initially, White Pine argues the district court had no jurisdiction to award additional attorney fees. White Pine relies on the principle that "the trial court is divested of jurisdiction over a case while it is under advisement on appeal." *See White v. State*, 795 P.2d 648, 650 (Utah 1990).

■ Generally, when a party files a timely notice of appeal, the court that issued the judgment loses jurisdiction over the matters on appeal.[6] As with many general

---

3. Even though the Sharps in their motion to increase security did not request the stay lifted, the trial court purported to vacate the stay effective the day before the court entered its amended order calling for additional security. Although we do not address the issue because of our resolution of the matter on different grounds, we find the trial court's procedural handling of the matter irregular.

4. White Pine argues lifting of the stay was improper because (1) it was beyond the jurisdiction of the trial court, and (2) the Sharps, in their motions, never requested the stay be lifted.

5. We note that White Pine does not contend that it entered into the stipulation "under protest", meaning to address the details of the security it

was required to post without waiving its fundamental objection to the requirement it post additional security. Additionally, we note that the parties did not specifically reserve the right to appeal the lifting of the stay. Furthermore, we effectively reach the substantive issues complained of by appellant in other sections of this opinion. Accordingly, we do not address the temporary vacation of the stay.

6. *See Venen v. Sweet*, 758 F.2d 117, 120–21 (3d Cir.1985) (general rule that trial court is divested of jurisdiction prevents "confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously"); *Thomas v. Capital Sec. Serv., Inc.*, 812 F.2d 984, 987 (5th Cir.1987)

rules, however, there are exceptions. Courts have concluded that even where a trial court is otherwise divested of jurisdiction due to an appeal, the trial court retains the power to act on collateral matters.[7] The Utah Supreme Court implicitly recognized this exception in *White*, indicating that to prevent unnecessary delay, "where any action by the trial court is not likely to modify a party's rights with respect to the issues raised on appeal," the trial court could act. 795 P.2d at 650.[8] Most appellate courts that have addressed the propriety of a post-judgment motion for attorney fees have concluded that the issue of attorney fees[9] involved a collateral matter, and thus the matter was appropriately considered by the trial court after an appeal was filed.[10]

("effective filing of a notice of appeal transfers jurisdiction from the district court to the court of appeals with respect to all matters involved in the appeal"); *Garcia v. Burlington N.R. Co.*, 818 F.2d 713, 721 (10th Cir.1987) ("Filing a timely notice of appeal ... transfers the matter from the district court to the court of appeals.").

7. *See, e.g., Thomas*, 812 F.2d at 987 (even if judgment properly appealed district court retains jurisdiction as to collateral matters); *Krull v. Celotex Corp.*, 827 F.2d 80, 82 (7th Cir.1987) (even during appeal trial court jurisdiction continues as to certain collateral matters); *Garcia*, 818 F.2d at 721 (district court retains jurisdiction in collateral matters not involved in the appeal); *Osborn v. Riley*, 331 So.2d 268, 271 (Ala.1976) ("As to those matters which are entirely collateral to the questions involved on appeal, the court and parties are free to proceed notwithstanding the appeal...."); *Dent v. Simmons*, 61 Md.App. 122, 485 A.2d 270, 273 (1985) (even after appeal perfected, trial court not precluded from proceeding as to collateral matters).

8. *See also Hurt v. Hurt*, 793 P.2d 948, 951 (Utah App.1990) ("In Utah procedure, the trial court retains jurisdiction to take necessary action in the·case while an appeal is pending."); *Baker v. Western Sur. Co.*, 757 P.2d 878, 880–81 (Utah App.1988) (trial court has jurisdiction to consider 60(b) motion while appeal is pending and enter denial if appropriate; if grant of 60(b) motion is appropriate, counsel should request an order of remand from appellate court for entry of order).

9. The issue presented in this appeal is slightly different in that it involves post-judgment motions for fees incurred after entry of the judgment, whereas most of the cases we rely on involved post-judgment motions for pre-judgment attorney fees. However, we do not find the distinction relevant to the issue of whether attorney fees are a collateral matter.

10. *See, e.g., Venen v. Sweet*, 758 F.2d 117, 120 n. 2 (3d Cir.1985) ("district court, during the pendency of an appeal is not divested of jurisdiction to determine an application for attorney's fees"); *Langham–Hill Petroleum, Inc. v. Southern Fuels Co.*, 813 F.2d 1327, 1330–31 (4th Cir.) (request for attorney fees raised issues collateral to main action as not being compensation for injury giving rise to action, thus not element of relief), *cert. denied*, 484 U.S. 829, 108 S.Ct. 99, 98 L.Ed.2d 60 (1987); *Thomas v. Capital Sec. Serv., Inc.*, 812 F.2d 984, 987 (5th Cir.1987) (even after judgment on merits pending in appellate court, trial court retains jurisdiction to entertain and decide motion regarding attorney fees or sanctions as they are collateral to merits of the action); *Krull v. Celotex Corp.*, 827 F.2d 80, 82 (7th Cir.1987) (attorney fees are collateral matters and trial court retains jurisdiction even after case is dismissed with prejudice); *Garcia v. Burlington N.R.R. Co.*, 818 F.2d 713, 721 (10th Cir.1987) (due to practical considerations attorney fees are always collateral and "even after a timely notice of appeal is filed, a district court may retain jurisdiction to determine the propriety and amount of attorney's fees"); *Finst Dev., Inc. v. Bemaor*, 449 So.2d 290, 291 (Fla.App. 1983) ("A proceeding seeking attorneys' fees and costs pursuant to the primary judgment is not a proceeding to enforce the primary judgment, and a supersedeas of such primary judgment does not, any more than the appeal therefrom, divest the trial court of jurisdiction to entertain such proceeding, to enter the ancillary judgment and to provide for its enforcement unless such ancillary judgment, is independently superseded."); *cf. White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (in federal civil rights action, trial court retains discretion to deny fees in cases where post-judgment motion unfairly surprises or prejudices opposing party).

Many courts that have addressed the matter have also held that a trial court retains jurisdiction to modify a supersedeas bond even while the underlying judgment is pending on appeal as the bond matter is collateral and not directly affecting the appeal. *See, e.g., Venen v. Sweet*, 758 F.2d 117, 120 n. 2 (3d Cir.1985) (trial court not without jurisdiction to issue orders regarding "filing of bonds or supersedeas bonds, or to modify, restore, or grant injunctions"); *Sheldon v. Munford, Inc.*, 128 F.R.D. 663, 665–66 (N.D.Ind.1989) (in light of Fed.R.App.P. 8(a) district court has jurisdiction over bond issues and "[i]f the amount of the judgment plus accrued interest ever exceeds the amount of the bond, the [appellees] are free to seek a modification or an increase in the amount of the bond"); *Osborn v. Riley*, 331 ·So.2d 268, 272 (Ala.1976) (motion for additional supersedeas bond was

■ We conclude the trial court had jurisdiction to address supplemental attorney fees and the consequent modification of the bond as such matters were collateral to the underlying judgment and their resolution does not affect the issues presented in the appeal of the underlying judgment.[11]

### B. *Propriety and Timing of Award of Attorney Fees*

White Pine also claims the district court awarded attorney fees contrary to the language of the underlying judgment. The judgment provided for supplemental attorney fees as follows: "this Judgment shall be supplemented and augmented in the amount of the Sharps' reasonable attorney's fees as established by affidavit and as incurred after August 31, 1988 in preparation of the Findings, Conclusions and Judgment, in responding to any post-trial motions, in collecting said Judgment by execution or otherwise, and after prevailing in any appeal."

White Pine contends the trial court erred in its award of attorney fees as the Sharps had not yet prevailed in the underlying appeal, nor did the court limit the fees awarded to the categories identified in the order. The Sharps respond that the supplemental attorney fees were awarded pursuant to the unambiguous language of the parties' real estate contract, and were not premature.[12]

#### 1. *Nature of Fees*

■ Where the terms of a contract provide for the award of attorney fees, such fees are "awarded as a matter of legal right." *Saunders v. Sharp*, 793 P.2d 927, 931 (Utah App.1990) (quoting *Cobabe v. Crawford*, 780 P.2d 834, 836 (Utah App. 1989) (quoting *Cabrera v. Cottrell*, 694

P.2d 622, 625 (Utah 1985))). If reasonable fees are recoverable by statute or contract, it is a mistake of law to award less than that amount. *Dixie State Bank v. Bracken*, 764 P.2d 985, 990–91 (Utah 1988).

■ Thus, if the attorney fee provision in the judgment was intended to be more limited in scope than the underlying contractual provision, the trial court erred. But the Sharps' remedy would be to appeal from that part of the judgment, not to ignore it and rely on the broader contractual language in requesting post-judgment fees. It appears likely, however, that the language in the judgment was intended only to identify examples of the kinds of fees that might be recovered post-judgment, not to substantively limit the recovery of fees.

The trial judge gave no indication as to the intent of the language White Pine relies on as limiting attorney fees. It is unclear whether the trial judge determined the fees were narrowly restricted, or whether he merely was providing an illustration of the types of attorney fees available under the contract. Therefore, on remand of this case to the trial court, the trial judge should clarify his intent regarding the language of the judgment in the context of providing the required explanation as to the amount of post-judgment fees awarded.

#### 2. *Timing of Fees*

■ To accept White Pine's interpretation that the judgment precluded the trial court from considering post-judgment attorney fees until after the appeal was completed is contrary to Utah law. In *Cabrera v. Cottrell*, 694 P.2d 622 (Utah 1985), our supreme court noted that parties entitled to

---

part of a proceeding separate from the decree appealed from and the amount and any modification thereof was within trial court's discretion).

**11.** White Pine does not claim that the Sharps waived their right to attorney fees by not having them included as part of the final judgment. However, we emphasize that, where possible, it is procedurally preferable to consider all matters in the first judgment in order to prevent

successive appeals such as have occurred in this case. *See Dent v. Simmons*, 61 Md.App. 122, 485 A.2d 270 (1985); *see also Cabrera v. Cottrell*, 694 P.2d 622 (Utah 1985).

**12.** The parties' contract provided that "the defaulting party shall pay all expenses of enforcing the same or any right arising out of breach or default thereof, including reasonable attorneys' fees, whether incurred with or without suit and both before and after judgment."

attorney fees for trial work waive the right to later claim such fees where parties fail "to ask for all of them in the trial phase of the case, or fail ... to adduce adequate evidence in support of a finding of reasonable attorneys fees." *Id.* at 624. The court reasoned:

It is not consistent with judicial economy to allow a party to apply for additional fees for trial work, whether in an independent hearing, in a separate suit, or at a hearing to determine an award of attorneys fees for necessary appellate work. Once the matter is litigated, or could have been litigated, a party may not later come into court to seek an additional award.... Therefore, an attorney will have to estimate fees for work done on post-trial motions *or ask the trial court to schedule a hearing on attorneys fees either after post-trial motions are disposed of or after the time for filing such motions has expired.*

*Id.* (emphasis added).

However, we do agree with White Pine that the trial court should not consider the Sharps' attorney fees incurred in pursuing the underlying appeal or this appeal until such time as the Sharps are successful on the underlying appeal. This procedure promotes judicial economy and prevents expenditure of time on matters which will be moot if the Sharps ultimately do not prevail on appeal.

### C. *Findings of Fact to Support Award of Attorney Fees*

■ White Pine also claims the trial court's award of post-judgment attorney fees must be reversed because the trial judge made no findings of fact to support the award.

The Utah Supreme Court has, on a number of occasions, held that "attorney fees should be awarded on the basis of evidence and that findings of fact should be made which support the award." *Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985). This court has reversed attorney fee

awards when the trial court failed to make appropriate findings of fact and conclusions of law. *See, e.g., Matter of Estate of Grimm,* 784 P.2d 1238, 1249 (Utah App. 1989) ("[t]he absence in the record before us of findings and conclusions on the issue of attorney fees compels remand to the trial court to correct that deficiency in the record"), *cert. denied,* 795 P.2d 1138 (Utah 1990). This court has also specifically noted that it is essential for meaningful appellate review for a trial court to explain, in the record, the factors and reasons for a *sua sponte* reduction of attorney fees. *See id; see also Martindale v. Adams,* 777 P.2d 514, 518 (Utah App.1989) (where fees undisputed court must explain basis for *sua sponte* reduction).

In the instant case, White Pine vigorously contested the reasonableness of the attorney fees sought by the Sharps. After hearing White Pine's objections and the Sharps' responses, the trial judge reduced the attorney fees requested and supported by affidavit by approximately $25,000, from approximately $105,000 to $80,000.[13] The trial judge gave no explanation to support why the fees were not further reduced as requested by White Pine or why the ultimate award was entered. Based upon the above authority, we find this was error. We therefore reverse and remand the issue of attorney fees to the trial court for an adequate explanation of the amount of fees awarded. If the trial judge determines there are disputed issues of fact, the appropriate process is to hold an evidentiary hearing and thereafter enter appropriate findings of fact.

### CONCLUSION

In sum, we do not address White Pine's contentions regarding compound interest and the lifting of the stay as such contentions are now moot. We conclude the trial court had jurisdiction to award post-judgment attorney fees and that the Sharps' right to such fees is controlled by the parties' contract. However, we reverse the

---

**13.** It is unclear from the record, but it does not appear that an evidentiary hearing was held on the issue of attorney fees in the instant case.

Even if attorney fees are undisputed the trial judge still must explain a reduction. *See Martindale,* 777 P.2d at 518.

award of attorney fees and remand this matter to the trial court to enter appropriate findings to support its award and to reduce the amount awarded by eliminating those fees generated as a result of preparing the primary appeal and this appeal, if any. An award of those fees should be delayed pending resolution of the underlying case on appeal. We further direct the district court to refrain from hearing this case on remand until the court can also consider the outcome in the underlying dispute, which is presently before this court in *Saunders v. Sharp,* No. 880710–CA.

ORME and RUSSON, JJ., concur.